THE J. B. EHRSAM & SONS MANUFACTURING COMPANY V. R. C. JACKMAN.

No. 14,558.    (85 Pac. 559.)

SYLLABUS BY THE COURT.

1. CONTRACTS—*Sale of Machinery—Guaranty—Conditional Test.* It is competent for parties to a contract for the sale of mill machinery and its installation in a mill to provide that a guaranteed capacity shall be demonstrated by an actual operation of the mill under certain conditions before payment of the price. Such a provision is not collateral, and the prescribed test must be made or waived before an action for the price can be maintained.

2. ——— *Agreement Construed—Condition Precedent to Payment.* A contract for the sale of mill machinery and its installation in a mill which provides that when the machinery is operated so as to meet the requirements of a milling guaranty under which it is sold the purchaser will accept and pay for it, which guarantees that the mill will perform according to the milling guaranty when operated by the seller, and which requires the purchaser to furnish wheat, labor and power to operate the mill at its full capacity when the seller is ready to operate it, contemplates a mill-run demonstration of the guaranteed capacity of the mill as a condition precedent to the payment of the price.

3. ——— *Rules of Interpretation.* In arriving at the meaning of a contract the court should give effect to each word if possible, should take into consideration all its parts in ascertaining the meaning of each particular part, should construe

written and printed portions together when they do not contradict each other, and should give weight to the practical construction placed upon the instrument by the parties themselves before litigation arose.

4. ——— *Default of Purchaser.* If the purchaser of mill machinery under a contract of the character described should, upon request of the seller, furnish wheat for a test run, but the wheat should be inferior in quality to that stipulated for and the mill should fail to develop its guaranteed capacity, the purchaser cannot take advantage of his own default and claim that the test is conclusive.

5. ——— *Use of Machinery by Purchaser—Test Not Waived.* The use by the purchaser of mill machinery sold under a contract of the character described, pending a test of the capacity of the mill which the purchaser is under no obligation to bring about and which the seller can delay indefinitely, does not constitute a waiver of the test or relieve the seller of the burden of showing that the mill complies with the guaranty, if such use is not in violation of the contract or prejudicial to the seller's rights.

6. PETITION—*Election of Counts.* A count of a petition which claims the price of property on the theory that the plaintiff has parted with title to it by sale, and that the defendant owns it and hence is entitled to its possession, is inconsistent with another count which asks damages as in trover for the conversion of the same property on the theory that the plaintiff owned it and was entitled to its possession; and it is not error to require an election between such counts.

Error from Ottawa district court; ROLLIN R. REES, judge. Opinion filed April 7, 1906. Affirmed. Opinion denying a rehearing filed May 12, 1906.

## STATEMENT.

THE plaintiff manufactures and erects mill machinery, and the defendant owns a flour-mill. The petition contains three counts. The first one pleads a contract whereby the plaintiff undertook to furnish and set up certain machinery for defendant's mill for a price which the defendant agreed to pay. Performance by the plaintiff is alleged, credit is allowed for payments made, and the balance of the contract price is demanded, together with the foreclosure of a lien upon

the mill property which the defendant perfected.  The second count pleads specially a clause of the contract retaining title to the machinery until the price is paid. Default on the part of the defendant, demand for a return of the property and refusal to comply with the demand are alleged, and damages as for a conversion are claimed.  The third count prays for the price of extras which the plaintiff placed in the mill.

The answer denied performance of the contract, pleads its breach, and asks for damages occasioned thereby.

On motion, the plaintiff was required to elect between the first and second counts of the petition.  It chose to go to trial upon the first count, and the second was stricken out.  The court made findings of fact and conclusions of law as follow:

"FINDINGS OF FACT.
"The court finds:

"(1) That the plaintiff now is, and that during all the times mentioned in its petition herein it has been, a corporation, duly organized and existing under and by virtue of the laws of the state of Kansas.

"(2) That on the 27th day of March, 1903, the defendant, R. C. Jackman, was, and ever since that time has been, the owner of the real estate described in the petition, and of the flouring-mill thereon.

"(3) That on the 27th day of March, 1903, the plaintiff and defendant made and entered into a certain written contract, using therefor a blank furnished by the plaintiff, which said contract was partly printed and partly written, and was in words, letters and figures as follows, to wit [the material portions of the contract are as follow]:

" 'GUARANTY.

" 'The first party makes the following guaranty, viz.: That the machinery herein mentioned to be furnished by the first party shall be made of good material, and in a workmanlike manner.  Should any part be found defective in material or workmanship within six months from date of acceptance, the first party promises to perform this guaranty by making good said part at the shops of the first party and allow freight, without additional compensation.  When said machinery and material are properly set up according to the first party's plan and flow sheet, and when operated under direction of the first party, said mill will be capable of producing flour in quality, percent-

age and yield equal to that made on any mill of any make having an equivalent line of machinery and milling like grade, quantity and quality of wheat. [Printed.] The first party further guarantees that said mill will have a capacity of two hundred (200) barrels of flour, all grades, per run of twenty-four hours, and will be capable of producing a barrel of flour of all grades from four bushels and twenty-four pounds of No. 2 wheat, cleaned on the receiving separator; the percentage of low grade not to exceed three per cent. [Written.] . . .

" 'The leather belting is guaranteed to be of first-class quality, and will be replaced free of charge if found defective. [Written.] . . .

" 'The second party promises to provide promptly a suitable building ready for the installation of said machinery and material, to provide for heating and lighting said building during progress of work, to furnish material for and build all foundations, to do all masonwork, including the cutting of walls, to convey machinery and material from cars to mill-house, and, whenever the first party is ready to operate said machinery, to furnish good, plump, dry milling wheat, labor and power to operate mill at full capacity, and not to hold the first party liable for damages caused by delays incident to starting up.

" 'The second party also promises that when said machinery is operated so as to fulfil the milling guaranty herein stated, then and thereupon the second party shall accept said mill and settle therefor according to the terms herein mentioned.

" 'It is understood and agreed that until said mill shall have been accepted and paid for the first party shall have, for itself and its servants, the right of access to any and every part of said premises, for the purpose of carrying out the provisions of this agreement. [Printed.]

" 'The second party further promises to pay to the first party, without relief from valuation or appraisement, exemption and bankrupt laws, and without cost or expense to said first party, the sum of ($5000) five thousand and no-100 dollars, in instalments as follows, to wit: Upon arrival of machinery, $2500; when mill is started and milling guaranty fulfilled, $1000; three months after mill is started and guaranty fulfilled, $770; on January 1, 1904, $730.' [Partly printed and partly written.]

"(4) That the plaintiff furnished all the machinery provided for in said contract, and put the same into the mill, which was completed, with the exception of some slight alterations afterward made in the flow sheet, about the 20th day of August, 1903.

"(5) That upon arrival of the machinery as provided in the contract the defendant paid to the plaintiff $2500, and that he sold to the plaintiff certain old machinery which was taken and accepted as a payment of the $730 which was due January 1, 1904, by the terms of the contract, and that in anticipation of a completion of the contract he advanced to the plaintiff $45, but failed and refused to make any further payments.

"(6) That all of the machinery sold to the defendant was with the express understanding that it should be

set up, and in fact it afterward was set up, in defendant's mill.

" (7) ·That the defendant furnished all the material and labor he was required to to complete said mill, and all the labor and power he was required to in making the tests provided for in the contract.

" (8) That on two separate occasions the plaintiff, deeming the mill complete, attempted to make tests of the mill as to its fulfilment of the guaranties set out in the contract, and the defendant at each of these times furnished a very high grade of wheat, testing sixty-one pounds to the bushel, for the purpose of being used in these tests, but on each of these occasions, after operating. the mill a while, without any fault on the part of the defendant, the tests were abandoned at the suggestion of the plaintiff.

" (9) That thereafter the plaintiff wrote to the defendant as follows:

" 'ENTERPRISE, KAN., October 12, 1903.
" 'Mr. R. C. Jackman, Minneapolis, Kan.:
" 'DEAR SIR—The sample of wheat which you promised to send us on Friday has not been received, and since telephoning to-day we find that you forgot to send it. Now this matter has been dragging along enough, and we insist that you send us a sample of the wheat which you promise to furnish us to be used in making a test run of your mill. If this wheat grades in accordance with the grades called for in our contract we will make arrangements to make a test run of your mill without delay. Give this matter immediate attention, please.
Yours truly,
THE J. B. EHRSAM & SONS MANUFACTURING COMPANY.
Per J. B. EHRSAM, J. J. A.'

" (10) That immediately upon the receipt of this letter the defendant sent to the plaintiff, at Enterprise, Kan., by express, a sample of No. 2 wheat testing fifty-nine pounds to the bushel, and requested that the wheat from which this sample was taken be used in making the test.

" (11) That after receiving this sample, and on the 23d day of October, 1903, the plaintiff sent its representatives to Minneapolis, for the purpose of making the test, and the defendant furnished several hundred bushels of the wheat from which the sample referred to in finding No. 10 had been taken, to be used by the plaintiff in making another test; and the plaintiff thereupon took charge of the mill and operated the same, but was unable to make a barrel of flour out of four bushels and twenty-four pounds of the wheat furnished, it requiring of the wheat furnished four bushels and thirty-

four and one-half pounds to produce a barrel of flour of all grades, with not to exceed three per cent. of low grade.

"(12) That all the wheat used in making this last test was dry No. 2 wheat, testing fifty-nine pounds to the bushel before being cleaned over the receiving separator, but that such wheat was not good, plump, dry No. 2 milling wheat, some of the grains being bleached and shriveled.

"(13) That the defendant made no complaint of the grinding quality or capacity of the mill, except that it would not produce a barrel of flour from four bushels and twenty-four pounds of the wheat furnished, with not to exceed three per cent. low grade.

"(14) That the said mill has never at any time since its completion been capable of producing a barrel of flour of all grades, with not to exceed three per cent. of low-grade flour, from four bushels and twenty-four pounds of No. 2 wheat, testing not to exceed fifty-nine pounds to the bushel, cleaned on the receiving separator.

"(15) That said mill has never at any time since its completion been capable of producing a barrel of flour of all grades, with not to exceed three per cent. of low-grade flour, from four bushels and twenty-four pounds of No. 2 wheat, not testing to exceed fifty-nine pounds to the bushel.

"(16) That the plaintiff furnished to the defendant at his request the extras mentioned in the third count to the petition, and that the amount due thereon from the defendant to the plaintiff is the sum of $461.34.

"(17) That on the 30th day of September, 1903, the plaintiff filed in the office of the clerk of this court its statement of a lien, duly verified, a true copy of which is attached to plaintiff's petition.

"(18) That as soon as said mill was completed, and before any of the tests were made, the defendant commenced to operate said mill and has been continuing to operate it ever since.

"(19) That the roll-belts were not first-class belting.

"(20) That the clutch-coupling was defective when set up in said mill.

"(21) That from the 1st day of September, 1902, until the 1st day of September, 1903, according to the rules in force adopted by the grain-inspection department of the state of Kansas, the following regulations

Ehrsam v. Jackman.

were in force determining what should constitute No. 1 hard wheat and No. 2 hard wheat:

" 'No. 1 hard shall be pure and hard winter wheat, sound, plump, and well cleaned, and shall weigh not less than sixty-one pounds to the bushel.
" 'No. 2 hard shall be sound, dry and reasonably clean hard winter wheat, and shall weigh not less than fifty-nine pounds to the bushel.'

"(22) Quality and weight of wheat were, in the year 1903, in the vicinity of said mill, both considered in determining its grades. The lowest weight for No. 2 hard wheat was fifty-nine pounds to the bushel, while that weighing sixty and sixty-one was also graded as No. 2, if it otherwise had the requisite qualities. No wheat was graded No. 1 in that vicinity.

"(23) The quality of the wheat in the vicinity of the mill during the summer and fall of 1903 was not very good, and made it extremely difficult to procure a high grade of No. 2 wheat.

"(24) The evidence does not disclose that the defendant ever furnished any other wheat for making any further tests, nor does it appear that the plaintiff ever asked to make any further test.

"(25) That at the time of making the last test said mill was capable of producing a barrel of flour of all grades, with not to exceed three per cent. low grade, from four bushels and twenty-four pounds of good, plump, dry milling wheat, cleaned on the receiving separator, weighing sixty-one pounds to the bushel, but the court cannot say whether it had the capacity to produce that quantity and quality of flour from any wheat inferior to that. This finding is not based on any of the tests attempted.

"(26) That, as it has not been determined by an actual test whether the mill was capable of fulfilling the guaranty, the court will make no findings upon the evidence offered by the defendant as to any damage he may have sustained by a breach of the warranty as to the quantity and quality of flour it was capable of producing from a given quantity and quality of wheat, although some evidence was offered for the purpose of sustaining that defense."

"CONCLUSIONS OF LAW.

"(1) That before the plaintiff can recover upon its first cause of action it must appear from the evidence

either that the mill when completed fulfilled the guaranty, or that the defendant waived a compliance therewith.

"(2) That there was no such an acceptance of the mill on the part of the defendant as waived a strict performance of the guaranty.

"(3) That the only way in which it could be determined, according to the contract, whether the mill was capable of fulfilling the guaranty as to the quantity and quality of flour it would produce from a given quantity and quality of wheat was by an actual test.

"(4) That a fair construction of this contract required that this actual test should be made with good, plump, dry No. 2 milling wheat.

"(5) That by attempting to make the test on the wheat furnished by the defendant the plaintiff did not estop itself from denying that it is bound by that test.

"(6) That until a fair test is made, according to the provisions of the contract, it cannot be determined whether or not the mill fulfils the guaranty with respect to the quantity and quality of flour it is capable of producing from a given quantity and quality of wheat.

"(7) That for any defect in the material furnished the defendant's remedy, as provided for in said contract, was to return the defective parts and have them replaced by new ones.

"(8) That the plaintiff is not entitled to recover anything in this case upon its first cause of action.

"(9) That the plaintiff is entitled to recover upon its third cause of action the sum of $491.34.

"(10) That the defendant is not entitled to recover anything in this action."

Motions for a new trial by both the plaintiff and the defendant were denied. Judgment was rendered pursuant to the conclusions of law, and both parties prosecute error.

*T. F. Garver,* and *G. W. Hurd,* for plaintiff in error.

*Thompson & King,* and *E. C. Sweet,* for cross-petitioner in error.

Ehrsam v. Jackman.

The opinion of the court was delivered by

BURCH, J.: The chief controversy is over the meaning of the contract. The plaintiff says that although the contract provides for a mill of a given capacity no test is prescribed by which that capacity is to be ascertained; that an actual test with the kind of wheat described in the contract is not necessary, and that such capacity may be proved by any competent evidence, citing *Kinnard v. Stanley*, 70 Kan. 770, 79 Pac. 661, and *Edward P. Allis Co. v. Columbia Mill Co.*, 65 Fed. 52, 12 C. C. A. 511.

The contract expressly provides that when the machinery is operated so as to meet the requirements of the milling guaranty the defendant shall accept the mill and pay for it. It is a part of the guaranty that the mill will perform according to the guaranty when operated under the plaintiff's own direction, and the defendant is required to furnish wheat, labor and power to operate the mill at its full capacity when the plaintiff is ready to do so. These terms can mean but one thing. Besides the existence of mill machinery which when properly set up shall have a given capacity, there must be an operation of the machinery in such a manner that it will demonstrate its powers.

The contract indicates that the defendant wanted a 200-barrel mill which would be the equivalent in all respects of those of his competitors, and which would make a barrel of flour from four bushels and twenty-four pounds of No. 2 wheat; that he was willing to pay the plaintiff's price for it whenever the mill produced the desired results, but that he wanted to see such results produced before parting with his money. The contract further indicates that the plaintiff, as a manufacturer of mill machinery, undertook to furnish the very kind the defendant needed, and agreed to wait for its pay until an actual working test of the mill

demonstrated a capacity commensurate with the guaranty. So interpreted the contract is fair and just and businesslike and reasonable. Any other interpretation would strain the meaning of words, and would violate the rule relied upon by the plaintiff when discussing other features of the contract—that all of its parts are to be considered in ascertaining the meaning of any particular part. Any other interpretation would also be contrary to the practical construction which the parties themselves have given it by three attempts at a mill-run demonstration. When writing for wheat with which to make a test run and calling the attention of the defendant to the provisions of the contract respecting the matter the plaintiff had no doubt as to what was required of it. To substitute some kind of proof of capacity other than that afforded by an operation of the mill would be to change the contract.

Since the mill must show for itself what it can do the character of grain to be used in making the test is important. The defendant says the special guaranty relating to the quantity and quality of flour to be made from a given number of bushels of wheat is to be considered as if standing alone; that it was written in a printed blank; that the printed clause relating to the kind of wheat to be supplied for a test run should be read solely with reference to the printed guaranty of an equal rating with other mills, and that it has no bearing upon the written guaranty; and his conclusion is that any kind of wheat which will grade No. 2 when cleaned on the receiving separator, even though some of the grains be bleached and shriveled, will satisfy his obligation in respect to material for a test.

This interpretation of the contract appears to have occurred to the defendant after he had provided the wheat for two inconclusive tests. It would kill the effect of the words "good, plump, dry milling" when the contract speaks of wheat to be used in showing a

compliance with the written guaranty, and it would utilize them when it prescribes the character of grain to be forthcoming to prove capacity according to the printed guaranty. To avoid this crux the defendant argues that the printed guaranty is meaningless, although he retained it in the contract after striking out other parts of the printed form.

This court cannot assume that there are no other accessible mills having an equivalent line of machinery, or that the quality, percentage and yield of flour produced by such mills from a given grade, quantity and quality of wheat cannot be ascertained. There is a likelihood at least that such mills exist, and that their owners have proved with perfect accuracy their exact capacity; and it may be that in order to fulfil the printed guaranty the plaintiff's machinery must be able to produce a barrel of flour, with not to exceed three per cent. low grade, from four bushels and twenty pounds of No. 2 wheat.

The clause in which the words referred to occur is a very important one. It is the duty of the court to give effect to every word of the contract if possible, and to construe its written and printed portions together when they do not contradict each other. The obvious sense of this undertaking is that whenever a test run is to be made the defendant must furnish wheat, labor and power to operate the mill at full capacity, and that the wheat furnished must be good, sound, dry milling wheat at all events, whether attention be directed specially to matching some other mill in some particular or to the competency of the machinery to extract from wheat grains a high percentage of flour.

Since this mill has not been operated to prove that it has the capacity called for the condition precedent to payment of the price has not been performed. Since the defendant has not furnished wheat of the kind required to perform the condition he is not in a

position to urge that the test made proves the mill to be inadequate. That operation merely showed what the mill will do with bleached and shriveled No. 2 wheat, and the defendant cannot in effect take advantage of his own default.

There is no question in the case of the defendant defeating payment through a wrongful refusal to arrange the preliminaries of a test, or of a recovery by the 'plaintiff notwithstanding a wrongful refusal to operate the mill under proper conditions.

The plaintiff says that if it requires a high quality of No. 2 wheat to produce a barrel of flour from four bushels and twenty-four pounds the contract should be construed to apply only to wheat of the superior kind. This court has no judicial knowledge of how much flour may be extracted from different grades of wheat. The plaintiff guaranteed that its machinery would produce a barrel of flour, with not to exceed three per cent. low grade, from four bushels and twenty-four pounds of good, plump, dry No. 2 milling wheat, and the court will not assume that it contracted to do an impossibility, or anything unreasonable.

There is nothing before the court to call for its opinion upon the situation of the parties if performance of the strict conditions which they have imposed upon themselves should be impossible, or upon the question whether or not performance by either of them may be excused, or, if excuses may be offered, which ones are valid.

Conceding, but not deciding, that what may be termed secondary evidence of the capacity of the mill might be proper under some circumstances, still the plaintiff is not entitled to recover in this action on the findings of fact. Finding No. 22 relates to a local custom not pleaded as affecting the contract, and hence is outside the issues. There is no finding that the custom was known to either party, and they must be held to have contracted with reference to the law. There-

fore finding No. 25, which described No. 1 wheat, does not show a compliance with the milling guaranty, and no other finding or set of findings is sufficient for that purpose.

Nor is the plaintiff entitled to a new trial under the provisional concession.   The facts being found the court can apply the law, and will do so unless an erroneous theory of the law has prejudiced the trial, which does not appear.   It is said the court erred in refusing to make additional findings of fact requested by the plaintiff relating to the efficiency and capacity of the mill, but such findings are not printed in the brief or further described, the evidence supposed to support them is not pointed out, and the assignment of error is not argued.   Hence the matter will not be considered. No complaint is made that evidence relating to the capacity of the mill was improperly rejected.   This being true, the facts found which are within the issues are to be regarded as the facts of the controversy.

The plaintiff claims that the second count of the petition was inserted on the theory that it may recover as in *quantum meruit,* notwithstanding a deviation from the contract.   No such theory is discoverable in the count itself.   It asks damages as in trover for the conversion of property owned by the plaintiff and to the possession of which the plaintiff was entitled. This cannot be done while at the same time the first count of the petition claims the price of the property on the theory that the plaintiff has parted with title by sale; that the defendant owns it and hence is entitled to its possession.   The two theories are inconsistent, and an election was properly required.

The plaintiff says that, the machinery having been accepted and used, the burden was on the defendant to allege and prove that it was not up to the requirements of the contract, and cites *Hoffman v. District of Hampton,* 96 Iowa, 319, 65 N. W. 322, among other decisions, as authority.   In that case the court said:

"Parties may well stipulate as to the character and

capacity of apparatus or machinery to be furnished or improvements to be made, and make affirmative proof of performance a condition precedent to the recovery of the contract price." (Page 324.)

The contract under consideration is of the kind there described. Besides, there has been no acceptance of the machinery in the sense that a performance of the guaranty is waived. The defendant was under no obligation to bring about a test of the mill. The plaintiff could do so at once, or delay as long as it saw fit. There is nothing in the contract or in the situation of the parties requiring that the mill lie idle until a compliance with the guaranty is shown, or requiring a forfeiture of the defendant's contract rights upon his setting the machinery in motion. If the plaintiff has not been prejudiced in any way, and there is no claim that it has been, simple use of the mill does not waive the test or shift the burden of proof.

The written and printed portions of the contract relating to the belting should be construed together, and the conclusion of the trial court upon that matter was correct. The plaintiff recovered a judgment upon its third cause of action after proof which it was obliged to make. Upon other matters which occasioned the bulk of the costs both parties asked relief, and both were defeated. Under these circumstances the judgment that each party pay half the costs will not be disturbed.

The judgment of the district court is affirmed. The costs in this court are divided.

All the Justices concurring.

---

OPINION DENYING A PETITION FOR A REHEARING.

The opinion of the court was delivered by

BURCH, J.: In a petition for a rehearing it is suggested that the first paragraph of the syllabus is broad enough to indicate an approval of the third conclusion

of law made by the trial court. The syllabus is of course based upon the situation of the parties disclosed by the record, and so considered can scarcely be misinterpreted; but to relieve the apprehension of counsel it may be said the court did not feel that it was called upon to determine the correctness of the conclusion referred to.

The parties have not acted under the contract. The contract provides for a test run of the mill, to be made with wheat of a specified quality. The plaintiff has not insisted that the defendant furnish wheat of contract quality for a test. The defendant has not arranged for a test with wheat of that quality. No test of the character prescribed by the contract has been made. The defendant has not waived a test according to the contract. Therefore, the defendant's obligation has not been matured, as the contract requires.

The fourth conclusion of law made by the trial court is correct as applied to the test run which the contract contemplates.

Manifestly the court must here take leave of the controversy. Further discussion of the grading of wheat in the vicinity of the mill in 1903 would be bootless, and the petition for a rehearing is denied.

All the Justices concurring.