No. 30,153.

Fred Mosher and O. W. Hall, a Copartnership, doing business as Fred Mosher-Grain, *Appellant*, v. The Kansas Coöperative Wheat Marketing Association, *Appellee*.

(15 P. 2d 421.)

Opinion filed November 5, 1932.

*J. Graham Campbell* and *W. M. Glenn,* both of Wichita, for the appellant.

*Benj. F. Hegler, A. V. Roberts* and *Roger P. Almond,* all of Wichita, for the appellee.

The opinion of the court was delivered by

Sloan, J.: This was an action to recover damages for the breach of a contract. The trial court held the contract void for indefiniteness, and the plaintiff appeals.

The plaintiff owned and operated a grain elevator at Kanorado from August 29, 1924, to and including the year 1927. During this time there was a competitive grain elevator in Kanorado, operating under the name of the Kanorado Equity Elevator Company. The petition contained the usual allegations for the recovery of damages for a breach of contract. It alleged the execution and performance on the part of the plaintiff, and the failure of the defendant. Attached to the petition was a copy of the contract, which is, in part, as follows:

"The Kansas Coöperative Wheat Marketing Association.
"Elevator Contract No. 721.

"This agreement, made and entered into this 29th day of August, 1924, between the Kansas Wheat Growers Association, a nonstock, nonprofit corporation, duly organized and existing under the laws of Kansas, hereinafter

called the association, party of the first part, and Fred Mosher-Grain, a corporation or association, duly organized and existing under the laws of the state of Kansas, hereinafter called the company, unless otherwise directly indicated, party of the second part:

"Witnesseth: In consideration of the mutual obligation of the respective parties hereto, and as an aid in carrying on the undertaking on the part of the association to provide an efficient coöperative marketing system for wheat as set forth in existing contract and agreements between the association and its individual members; and in consideration of the expenses incurred and to be incurred by the company in providing local handling facilities for wheat; and in pursuance of provisions of the contract between the company and the association, it is agreed:

"USE OF FACILITIES.

"1. That the association shall use the facilities of the company located at Kanorado, Kan., in making the delivery of wheat of its members to the association, provided, that when said company is unable to handle all wheat delivered by said members of association, either through lack of railroad facilities or otherwise, there shall be nothing in this contract to prevent said association from contracting with additional elevators to handle such excess.

"GRADING AND HANDLING.

"2. The company agrees to weigh, test, grade and ship to the order of the association, all wheat delivered to the company for such purposes by individual members of the association."

The association agreed to carry insurance on the wheat received by the company, make rules and regulations for standardizing the manner of keeping elevator records and accounts, and making reports. The company agreed to keep separate the wheat delivered to it by the members of the association, forward samples of all wheat delivered and deliver to the association all wheat delivered to it by the members of the association. For this service the association agreed to pay four cents per bushel for the first one hundred thousand bushels handled by the company. The provision for terminating the contract is as follows:

"13. This agreement shall be in full force and effect from the date of its execution to June 15, 1929, with the provision that either party hereto may terminate the contract at the end of any contract year under the following terms and conditions: Notice in writing of such termination must be given by the party desiring the same to the other party prior to the first day of April preceding June 15, of any year, and the party giving such notice must, prior to the effective date of same, pay any indebtedness due the other party."

The answer contained a general denial and an affirmative allegation that the plaintiff did not have storage capacity available during

the year 1928 to handle the wheat of the members of defendant's association, and that the plaintiff was not in fact damaged by the failure of the members of defendant to deliver wheat.

A demand was made by the defendant for an inspection of the books and papers of the plaintiff and a motion filed asking that the court appoint an auditor. The motion was as follows:

"Comes now the defendant and moves the court to appoint an auditor to audit the books of the plaintiff corporation for the purpose of determining the following facts:

"1. The amount of storage capacity which the plaintiff had available from day to day between the 17th day of July, 1926, and the 23d day of April, 1927, and also, between the 1st day upon which any member of defendant delivered wheat to the Kanorado Equity elevator as alleged in the eighth paragraph of plaintiff's petition and the said 23d day of April, 1927.

"2. That said auditor be instructed to compare the deliveries of wheat at said Kanorado elevator by plaintiff's members, the dates and amounts of which deliveries defendant offers to make available to said auditor with the storage capacity of plaintiff's elevator which would have been available for the reception of said wheat at the time of its delivery to said Kanorado Equity elevator and to determine, therefrom, how much of said wheat the plaintiff could have handled if it had been delivered to it.

"3. That said auditor be directed to examine and analyze the books of plaintiff and make, therefrom, a computation showing the expense of handling a bushel of wheat in plaintiff's elevator during the crop season of 1926 and 1927 and what expense plaintiff would have incurred in handling the said 37,494 bushels of wheat of the defendant association's members which was delivered to the said Kanorado Equity Elevator Company as alleged in plaintiff's petition."

On the hearing of the motion it was agreed that the court appoint an auditor to make findings as to the following facts:

"1. The amount of storage capacity, which the plaintiff had available from day to day between July 17, 1926, and April 23, 1927.

"2. The expense per bushel of handling wheat in plaintiff's elevator during the period from July 17, 1926, to April 23, 1927, and what, if any, added expense per bushel plaintiff would have incurred in handling 37,494 bushels of wheat in addition to the wheat that the plaintiff did actually handle during said period."

The auditor made and filed his report and the case was tried to the court on an agreed statement of fact. The agreed facts, so far as pertinent to the question under consideration, are as follows:

"5. That plaintiff handled the wheat of the members of defendant association from and after the execution and delivery of said contract until the 17th day of April, 1926, when the defendant association by written communication dated April 17, 1926, notified plaintiff that the association wished to cancel its

contract with plaintiff for handling association wheat, such cancellation to take effect June 30, 1926.

. . . . . . . . . . . . . . .

"8. That during the wheat-shipping season of 1926 and between the dates of July 17, 1926, and April 23, 1927, there was delivered to the Kanorado Equity elevator mentioned in plaintiff's petition and shipped out by said Kanorado Equity elevator, twenty-six (26) cars of wheat which was grown, harvested and delivered to the Kanorado Equity elevator by the members of the defendant association.

"9. That said twenty-six (26) cars of wheat contained a total shipping weight of 2,249,640 pounds or a total of 37,494 bushels.

"10. That the plaintiff was at all times ready and willing to handle the wheat of the defendant association members and at all times between July 17, 1926, and April 23, 1927, was able to and had the necessary elevator facilities and capacity to handle said 37,494 bushels of wheat of the defendant association's members.

. . . . . . . . . . . . . . .

"17. That figuring plaintiff's cost per bushel at $0.01302, the net profit per bushel would have been $0.02698 or a total profit for handling 37,494 bushels of $1,011.58.

. . . . . . . . . . . . . . .

"19. That a true copy of the marketing contract between the defendant, the Kansas Coöperative Wheat Marketing Association, and its members, which was in force during the year 1926, is hereto attached, marked 'Exhibit A' and made a part hereof as if herein fully set forth."

The pertinent parts of the contract between the association and its members are as follows:

"SEC. 2. The association agrees to buy and the grower agrees to sell and deliver to the association all of the wheat produced by him or for him or acquired by or for him as landlord or lessor during the years 1924, 1925, 1926, 1927 and 1928. The grower may retain wheat for feed, and seed to be sown by himself; or to be sold for seed directly to other growers.

. . . . . . . . . . . . . . .

"SEC. 4 (a). All wheat shall be delivered at the earliest reasonable time after harvesting, to the order of the association, at the warehouse or elevator controlled by the association; or at the nearest public warehouse or elevator, if the association controls no elevator or warehouse in that county; or by shipment as directed to the association and by delivery of the indorsed wheat tickets or warehouse receipts or bills of lading properly receipted or indorsed.

"SEC. 12. Nothing in this contract shall be interpreted as compelling the grower to deliver any specified quantity of wheat per year; but he shall deliver all the wheat produced or acquired by or for him as landlord or lessor."

At the close of the testimony the court took the case under advisement and on January 24 advised counsel in the case by letter, as follows:

"The contract between the plaintiff and the defendant provides as follows:

"1. 'That the association shall use the facilities of the company located at Kanorado, Kan., in making the delivery of wheat of its members to the association.'

"This provision of the contract does not specify how much wheat shall be delivered, nor does it specify that all of the wheat of the members of the association shall be delivered. It does not even use the article 'the' before wheat.

"A serious question in my mind is, whether the contract is not void for uncertainty, and in not specifying the amount of wheat which should be delivered. Is not the contract complied with by delivering some wheat? Is not the amount of wheat that is to be delivered at the option of the association? I shall be glad to.have you submit authorities to me on this question of law. I would like to have this question argued to me after you have collected your authorities."

In accordance with the suggestion and request of the court, authorities were submitted and on March 3, 1930, the court again advised counsel as follows:

"In my opinion, the contract entered into between the parties in this action is void for uncertainty as to the amount of wheat which was to be furnished by the defendant to the plaintiff.

"Therefore my decision is in favor of the defendant.

"Please prepare journal entry in accordance with this letter."

A motion for new trial was filed, argued and overruled, and the case is properly here for review.

The appellant contends that the court erred in holding that the contract was void for uncertainty. We glean from the record that the principal question for our consideration in this case arose in the mind of the trial court and not in the mind of either of the parties to the litigation. The action was for a breach of contract. A general demurrer was filed, but no suggestion appears to have been made to the court on its presentation that the contract was void for uncertainty. After the preliminary matters were disposed of, the answer filed, the facts agreed to and the case submitted to the court for decision, the trial judge, in a letter addressed to the attorneys, suggested that the contract was void for uncertainty in not specifying the amount of wheat to be delivered. Up to this time in the transactions between the parties this question does not appear to have occurred to either of them.

There are a few simple rules for the interpretation of contracts which should be called to mind before we attempt to analyze the contract under consideration. It is not in the province of the court

to make contracts for the parties. Its duty is confined to the interpretation of the contract which the parties have entered into. (13 C. J. 525.) Every presumption is in favor of the legality of a contract, rather than its illegality. The obligation of the court, if it can legally and fairly be done, is to read life rather than death into a written instrument executed by competent parties. (*Gas Co. v. Altoona*, 79 Kan. 466, 469, 100 Pac. 50.) To accomplish this end the court should take into consideration all of the circumstances and conditions which confronted the parties when they made the contract, and sometimes these circumstances will make plain the otherwise doubtful intent of the parties. (*Ehrsam v. Jackman*, 73 Kan. 435, 85 Pac. 559; *Berg v. Scully*, 120 Kan. 637, 245 Pac. 119.) It may also take into consideration the interpretation placed upon the contract by the parties themselves. (*Kanzius v. Jenkins*, 98 Kan. 94, 97, 157 Pac. 417.) If the parties have by their conduct placed an interpretation on an ambiguous contract it will be followed by the court, if not inconsistent with the language of the contract. (*Landon v. Railway Co.*, 113 Kan. 628, 216 Pac. 309; *Carlisle v. Business Association*, 104 Kan. 512, 180 Pac. 280.) This is true even though the language used may more strongly suggest another construction. (*Brick Co. v. Bailey*, 76 Kan. 42, 90 Pac. 803.)

At the time of the execution of the contract the appellant was engaged in operating a grain elevator at Kanorado, Kan. The appellee had by written contract obligated itself to purchase all of the wheat produced by its members for the years 1924 to 1928, inclusive, and the member bound himself to deliver all of the wheat produced by him to the warehouse or elevator controlled by the appellant, "or at the nearest public warehouse or elevator, if the association controls no elevator or warehouse in that county." It may be fairly inferred from the agreed statement of facts that at the time of the execution of the contract the appellee had members in the county or community in which the appellant's elevator was located. The contract is quite voluminous. It recites that a part of the consideration of the contract is to enable the appellee to carry out the obligation created with its members and for such purpose it binds itself, as follows:

"That the association shall use the facilities of the company located at Kanorado, Kan., in making the delivery of wheat of its members to the association; provided, that when said company is unable to handle all wheat

delivered by said members of association, either through lack of railroad facilities or otherwise, there shall be nothing in this contract to prevent said association from contracting with additional elevators to handle such excess."

Under the terms of this agreement the appellee obligated itself to use the facilities of the company in making the delivery of wheat of its members to the association, and it reserved the right, in the event the facilities of the appellee were inadequate to handle all of the wheat delivered, to contract with other grain elevators to handle the excess. In other words, it was obligated to use the facilities and reserved only the right to contract elsewhere in the event the facilities were inadequate, and then only for the excess. It is claimed by the appellant that it was the intent of the parties that all of the wheat produced by the members of the appellee in the vicinity of Kanorado, and delivered in Kanorado, should have been delivered to the appellant. On the other hand, the appellee contends that under the terms of the contract they were not obligated to deliver any amount of wheat, and consequently there is no standard by which damages can be measured which invalidates the contract.

It may be conceded that the contract is indefinite and ambiguous. The agreement to use the facilities is definite. The extent of the use is uncertain. The parties, however, operated under the contract from its date until April 17, 1926. The fair interpretation of the agreed statement of facts is to the effect that all of the wheat delivered by members of the association in Kanorado during this time was delivered to the appellant. The appellee, on April 17, 1926, addressed a letter to the appellant in which it stated that it desired to cancel its contract for the handling of wheat. In the appellant's petition it was alleged that during the season of 1927 appellee's members delivered to the Kanorado Equity Elevator Company 37,494 bushels of wheat and that such wheat, under the contract, should have been delivered to the appellant. The appellee answered that the appellant did not have sufficient capacity available to handle the wheat of the members of the association. They then filed a motion in which they asked the court to appoint an auditor to ascertain the amount of wheat delivered to the Kanorado Equity Elevator Company, and to determine therefrom how much of said wheat the appellant could have handled had it been delivered to it, and also to determine the cost of the handling of such wheat by the appellant.

It clearly appears from the conduct of the parties up to that time that the appellee understood it was obligated under the contract to deliver the wheat of its members that came to Kanorado to the appellant. The appellant consented to the motion and the court made the order in accordance therewith. The facts were agreed to and no suggestion is made of any other interpretation of the contract. This conduct points clearly to the intent and purpose of the parties in the execution of the contract. The interpretation placed upon it by the parties through their conduct is in no way inconsistent with the language used in the contract. The conduct of the parties has made certain what the language left indefinite, that is, that it was the intent and purpose of the parties in making the contract to obligate the appellee to deliver all of the wheat of its members delivered in Kanorado to the appellant.

It is contended that the notice of cancellation of April 17, 1926, was sufficient to cancel the contract. The contract provided that it should be in full force and effect until June 15, 1929, but each of the parties reserved the right to terminate the contract at the end of any contract year by giving notice of their intentions so to do prior to the first day of April, preceding June 15. The parties had a right to agree on a means of terminating the contract, and such provision is binding and will be enforced as any other part of the contract. The option to terminate a contract is in the nature of a forfeiture, and it will be strictly construed. The notice to terminate, to be effective, must be given at the stipulated time. (5 Page on Law of Contracts, § 2598; 13 C. J. 607.) The notice was too late and did not terminate the contract.

The judgment of the district court is reversed and it is directed to enter judgment in favor of the plaintiff in the sum of $1,011.58, with interest thereon at six per centum per annum from April 23, 1927, and costs of suit.