No. 25,221.

THE NATIONAL SUPPLY COMPANY, *Appellant, v.* GEORGE B. McLEOD, *Appellee.*

SYLLABUS BY THE COURT.

REDEMPTION LAW—*License to Operate for Oil and Gas—Sale on Execution—An Incorporeal Hereditament to Which the Redemption Law Does Not Apply.* The statute relating to redemption of real property from sale on execution does not apply to the incorporeal hereditament created by license to mine and operate for oil and gas, and if mineral be discovered, to produce and take care of the product.

Appeal from Allen district court; ROBERT E. CULLISON, judge. Opinion filed July 5, 1924. Reversed.

*W. N. Banks, O. L. O'Brien, Walter L. McVey,* and *Jay W. Scovel,* all of Independence, for the appellant.

*A. R. Enfield,* of Iola, for the appellee.

The opinion of the court was delivered by

· BURCH, J.: The appeal was taken from a judgment allowing a lessee eighteen months' time within which to redeem from a sheriff's sale of an oil and gas lease.

The lease granted a tract of land "for the sole and only purpose of mining and operating for oil and gas, and of laying pipe lines, and of building tanks, power stations and structures thereon to produce and take care of said products." The statute in force at the time permitted a defendant owner to redeem any "real property" sold under execution, special execution, or order of sale. In 1923 the statute was amended to state that it does not apply to oil and gas leases or to oil and gas leasehold estates (R. S. 60-3439).

The General Laws of the territory of Kansas of 1859, the Compiled Laws of 1862 and the General Statutes of 1868 contain the following definition, now forming R. S. 77-201:·

"The word 'land,' and the phrases 'real estate' and 'real property,' include lands, tenements and hereditaments, and all rights thereto and interest therein, equitable as well as legal." (Subdiv. 8.)

The definition is to be observed unless it would result in a construction inconsistent with the manifest intention of the legislature or repugnant to the context of the statute under interpretation. (R. S. 77-201.) The definition is also to be considered in the light of the common law, which was made the rule of action and decision by the legislature which framed the definition (Gen. Laws 1859, ch. 121, § 1), and which has been in force in aid of the statutes of the state since 1868. (R. S. 77-109.) ·

The nature of a so-called oil and gas lease has been discussed so many times, it is not necessary to do so again. The court has classified the peculiar interest created by such an instrument as an incorporeal hereditament. Probably because of this designation, the district court applied the redemption act. At common law hereditaments were of two kinds, corporeal and incorporeal. Corporeal hereditaments were physical objects, comprehended under the term land, and were said to lie in livery, originally a physical act relating to tangible substance. Incorporeal hereditaments were not corporeal things. They existed only in contemplation of law, were said to lie in grant, and affiliated with chattel interests. The distinction is, for example, between land and the profit arising from land, called rent.

Early settlers of the state found gas and oil some time in the 1850's. The first development work was undertaken in 1860, and such work became sporadically active in the early 70's. In 1884 gas was piped into Paola. Gas was lighted and an oil well was shot at Neodesha as part of the Fourth of July celebration in 1893, the year the redemption act was passed. Ten years later oil and gas leases commenced to come before the court for interpretation. It is a well-known fact that the chief purpose of the redemption act was relief of landowners unable to protect themselves against mortgage foreclosure sales. While the statute was not confined to redemption from such sales, sales of oil and gas leases were not-in the legislative mind, and of course were not in mind when the definition was framed. Therefore the court is obliged to do what it is so often called on to do, that is—determine as best it can what the law probably would have been had the subject been under consideration. There are no rules to guide the court in making the determination, which must be based on consideration of the nature of the subject, the terms and purpose of the statute, and the degree of congruity between them.

. In the case of *Gas Co. v. Neosho County*, 75 Kan. 335, 89 Pac. 750, the court held that the statute relating to taxation of separately owned mineral rights applied only when title to mineral in place was severed from title to the remainder of the land, and did not apply to an oil and gas lease. In the opinion it was said:

"The lease grants no estate in the land or in the oil or gas which it may contain. It creates an incorporeal hereditament only—a license to enter and explore for oil and gas, and if they are discovered to produce and sever them. . . . Until discovered and brought to the surface no severance of title occurs. The minerals not only remain a constituent part of the land, but they belong to the owner of the surface soil beneath which they lie. The lessee has no 'right or title' to them, . . . and they are not separately taxable to him." (p. 339.)

The mechanics' lien statute provides for a lien upon "land," which under literal application of the definition would include an incorporeal hereditament. In the case of *Phillips v. Oil Co.*, 76 Kan. 783, 92 Pac. 1119, the court said:

"An oil and gas lease conveys no present vested interest in the oil and gas in place. The interest conveyed is a mere license to explore—an incorporeal hereditament—a *profit a prendre.* . . .

"The discovery of oil or gas under the lease authorizes the lessee to sever the mineral from the soil, and after he has done this, and not before, he acquires the ownership of the thing severed. This may then become subject

to taxation and to the usual liabilities which ownership of personal property carries with it; but his rights under the lease never ripen into an interest in the real estate sufficient to support a mechanic's lien for labor or material furnished in the process of discovery or in severing the mineral from the land." (pp. 784, 785.)

In the case of *Robinson v. Smalley*, 102 Kan. 842, 171 Pac. 1155, the court reached the conclusion that instruments granting right to explore, and if oil or gas be found to produce and sever, are within the purpose and purport of the sixth section of the statute of frauds. In the opinion it was said:

"While the court has held that an oil and gas lease of the kind under consideration does not constitute a conveyance, will not support a mechanic's lien, does not operate as a grant and severance of mineral in place, and creates no estate proper in the land itself, it does create an incorporeal hereditament. A contract for the sale of hereditaments, whether incorporeal or corporeal, is within the sixth section of the statute of frauds." (p. 843.)

Proceeding according to the method indicated, the court concludes the redemption act did not originally apply to a sale of the intangible incorporeal hereditament under consideration. The provisions of the redemption act relating to shortening the period of redemption for abandonment, or lack of good-faith occupation (R. S. 60-3439), clearly indicates the legislature had in mind a corporeal thing capable of physical possession. The express exclusion in 1923 from the redemption act of oil and gas leases which create no estate in land is regarded as declaratory. The further exclusion of oil and gas leasehold estates indicates quite clearly the inappropriateness of the redemption act to the lesser interest.

The judgment of the district court is reversed and the cause is remanded with direction to disallow redemption.