No. 36,624

O. J. Connell, *Appellant*, v. Kanwa Oil Inc., *Appellee.*

(170 P. 2d 631)

Opinion filed July 6, 1946.

*J. B. McKay,* of El Dorado, argued the cause, and *O. J. Connell, Jr.,* of El Dorado, was on the briefs for the appellant.

*Harold W. McCombs,* of Russell, and *Paul M. Donald* and *J. M. Donald,* both of Bowie, Texas, were on the briefs for the appellee.

The opinion of the court was delivered by

Parker, J.: This was an action for the specific performance of an alleged written agreement for the sale of an undivided three-fourths interest in an overriding royalty interest of one-eighth of eight-eighths of all oil, gas and casinghead gas, produced, saved

and sold, from a certain oil producing tract of real estate located in Russell county, Kansas, in which the plaintiff, a resident ' of Butler county, sought to obtain service by publication in the district court of Russell county on the defendant, a foreign corporation and the owner of such royalty interest. The appeal is from a judgment sustaining a motion to quash the publication service and taxing the costs of the action against the plaintiff.

The grounds relied on by defendant for the sustaining of its motion to quash were:

"(a) That no valid service of summons by publication has ever been had in said cause.

"(b) That no valid affidavit for service by publication has ever been filed in said cause.

"(c) That this defendant is a corporation organized, existing and having its principal place of business outside of the State of Kansas; that no basis exists or has existed for obtaining service of summons upon this defendant by publication."

Since it is conceded the all-decisive issue raised by the appeal is whether service by publication on a foreign corporation is authorized by our statute in an action for specific performance of a contract to convey an overriding royalty interest where actual service of summons on such corporation cannot be had within the state, what has been heretofore related will suffice for a factual statement and permits inverse consideration of the grounds set forth in the motion.

As we approach consideration of the issue thus presented, it should be stated the positions of the parties with respect to such issue are in sharp conflict and there can be no reconciling of their views regarding the fundamental legal propositions applicable to its determination. However, their respective claims, although they are not to be so easily disposed of, can be simply stated. The appellant contends, first, that an overriding royalty interest is "land" within the meaning of G. S. 1935, 60-510, and hence the action may be brought and publication service obtained in the county where the land involved in the pleaded contract is situated and, second, that even if such an interest is not held to be land, then, and in that event, the suit is nevertheless maintainable in such county and service by publication proper under the provisions of G. S. 1935, 60-2525, authorizing constructive service of summons in certain cases, of which his cause is one. On the other hand appellee insists that an overriding royalty interest in an oil and gas lease is not "land" within the

meaning of the section of the statute first above referred to and that an action for specific performance of an agreement to sell such an interest is one in personam where service by publication is unauthorized.

G. S. 1935, 60-510, upon which appellant bottoms the position assumed by him in his first contention, was originally section 1 of chapter 384 of the Laws of 1903, and reads:

"An action to compel the specific performance of a contract for the sale of lands situated in the state of Kansas may be brought in any county where the land or any part thereof is situate, or in any county where the defendant or any one of the defendants may reside."

Prior to 1903, all actions to compel the specific performance of agreements for the sale of lands were regarded as actions in personam and could be brought only in the county where the defendants resided or could be summoned and, except for the enactment just quoted, there has been no material change since that date in provisions of our statute fixing venue in civil actions. There was then—as now—in full force and effect the following provisions which for convenience will be referred to as found in our present statute: G. S. 1935, 60-501 to 60-502, inclusive, pertaining to actions concerning real estate or any interest therein, which required the action to be brought in the county where the subject of the action—the land—was situated; G. S. 1935, 60-503, providing that actions therein designated and commonly referred to as local in character must be brought in the county where the cause, or some part thereof, arose; G. S. 1935, 60-507, specifying that an action other than one of those mentioned in the first three sections of the article (60-501, 60-502 and 60-503), against a nonresident of the state or a foreign corporation, might be brought in any county in which there was property of, or debts owing to, the defendant or where such defendant might be found; and certain other sections, G. S. 1935, 60-504, 60-505 and 60-508, inapplicable to the involved situation and for that reason not more specifically described. All other actions were strictly transitory in nature for purposes of venue and by the then, and now, provisions of G. S. 1935, 60-509, were required to be brought in the county in which the defendant resided or might be summoned.

With the foregoing statutory sections effective it is interesting to note the early holding of this court both before and after the 1903 enactment on the subject of jurisdiction in cases similar in character to the one here involved.

In *Close v. Wheaton,* 65 Kan. 830, 70 Pac. 891, decided in 1902, it was held:

"An action to compel the specific performance of an agreement to convey land, if the defendant's obligation is in contract merely, without any element of trust, is an action in personam, and must be brought in the county where the defendant resides, and not of necessity in the county where the land is situated." (Syl.)

And said:

"The character of an action for specific performance as in personam entirely is so well established that courts having jurisdiction of the parties frequently entertain suits to compel the execution of contracts for the conveyance of lands in other states in which, of course, their decrees as to the res cannot operate. (*Lindley v. O'Reilly,* 50 N. J. L. 636, 1 L. R. A. 79, 15 Atl. 379, 7 Am. St. Rep. 802.)

"Sometimes a question may exist as to whether the complaining party may not have such peculiar interest in the property as to entitle him to the enforcement of a trust, and not of contract merely (*Merrill v. Beckwith,* 163 Mass. 503, 40 N. E. 855), in which event the action might be local and not transitory, but the plaintiffs in this case have neither stated in their pleadings nor claimed before us such character of right. We are, therefore, well convinced that the inherent nature of the ordinary proceeding to compel a vendor to comply with his contract, as contract, by the execution of a deed, makes the action one in personam, which can be brought only where the defendant resides or may be legally served with personal process. . . .

"Suits for the performance of agreements are not brought to determine titles, because, if so, they would operate on the res, but they are brought to enforce purely personal contracts. Of course, if the defendant obeys the decree the title will pass, and the court may in proper cases order the decree to stand as a conveyance, in which instance also the title will pass; but, nevertheless, the object of the suit is not to determine the title, but to compel the defaulting party to abide his agreement." (pp. 832-834.)

Later in *Horner v. Ellis,* 75 Kan. 675, 90 Pac. 275, wherein *Close v. Wheaton,* supra, was quoted with approval we held:

"Prior to the enactment of chapter 384 of the Laws of 1903 a suit for the specific performance of a contract to convey real estate was an action in personam, and could be brought only in the county where the defendants or any of them resided, but no jurisdiction of a defendant could be obtained by publication service." (Syl. ¶ 1.)

See, also, *Heston v. Finley,* 118 Kan. 717, 236 Pac. 841, holding:

"An action in personam and for equitable relief, other than for the adjudication of interests in real property, can only be commenced in a county where the defendant resides or can be summoned." (Syl. ¶ 1.)

So far as applied to appellant's first contention the decisions to which we have just referred make it apparent that in this jurisdic-

tion, in the absence of a statutory enactment fixing venue in specific performance cases in the county where land involved in the contract of sale is situated the court in the case at bar could have acquired no jurisdiction over the appellee. It follows the all-decisive question is whether in view of the provisions of G. S. 1935, 60-510, the instant action was properly brought in Russell county. If so, publication service was unquestionably proper for G. S. 1935, 60-2525, expressly authorizes constructive service in actions brought under such section of our civil code. Otherwise it was not, since without statutory indication to the contrary such action is clearly in personam, is transitory in character, and one which could only be brought in a county where the defendant resided or could be summoned as required by G. S. 1935, 60-509.

At the very outset in the presentation of his contention an overriding royalty interest is land, probably because of the fact there can be no question but what such an interest is carved out of an oil and gas lease and hence can rise no higher than its source, appellant, with commendable candor, recognizes a doctrine prevailing in this state which, unless its force and effect can be avoided, presents an insurmountable barrier to the successful establishment of his position. He states that under our decisions no extended discussion regarding the nature of an oil and gas lease is necessary and concedes the estate created by such an instrument is an incorporeal hereditament. We go further and say, whatever the situation may be elsewhere and irrespective of how the present personnel of this tribunal would decide the question if it were one of first impression, that since *Zinc Co. v. Freeman,* 68 Kan. 691, 75 Pac. 995, down to the present time this court has definitely committed itself to the doctrine—even to the extent it can be said to be an established rule of property and must be adhered to—that an oil and gas lease conveys no interest in the land therein described but merely a license to explore, and is personal property— an incorporeal hereditament—a profit *a prendre.* See *Dickey v. Brick Co.,* 69 Kan. 106, 76 Pac. 398; *Phillips v. Oil Co.,* 76 Kan. 783, 92 Pac. 1119; *Gas Co. v. Neosho County,* 75 Kan. 335, 89 Pac. 750; *Robinson v. Smalley,* 102 Kan. 842, 171 Pac. 1155; *White v. Green,* 103 Kan. 405, 173 Pac. 974; *Supply Co. v. McLeod,* 116 Kan. 477, 227 Pac. 350; *Burden v. Gypsy Oil Co.,* 141 Kan. 147, 40 P. 2d 463; and *Fry v. Dewees,* 151 Kan. 488, 496, 99 P. 2d 844. Many more cases to the same effect could be noted but those to

which we have referred, with the decisions therein cited, will suffice as authority for what has just been stated.

Notwithstanding what this court has held as to the nature of an oil and gas lease appellant claims his action to require specific performance of an agreement to assign an interest in an overriding royalty springing from such an instrument is actually land within the meaning of G. S. 1935, 60-510. He directs our attention to the statutory definition of land, G. S. 1935, 77-201, *Eighth*, which reads:

"The word 'land,' and the phrases 'real estate' and 'real property,' include lands, tenements and hereditaments, and all rights thereto and interest therein, equitable as well as legal."

and points to the word hereditaments therein found. He insists such term includes incorporeal as well as corporeal hereditaments and that while property interests properly classified as incorporeal hereditaments are in most instances personalty they may for some purposes be treated as real estate. Boiled down, his position is that because the word "hereditaments" is to be found in the statutory definition of the term "land" this court is not only justified but required to conclude G. S. 1935, 60-510, is applicable to all incorporeal hereditaments, so long as the fountain from which they spring is real estate, irrespective of well-established law to the effect they create no estate or interest in land and are only personalty.

Appellant's argument in support of his position on the point in question is interesting and intriguing and if it had been presented to this court before the status of the property interest conveyed by an oil and gas lease had been definitely fixed and determined by our decisions it would possess considerable merit. However, at this late date his position cannot be sustained for several reasons any one of which we deem sufficient.

In the first place it must be remembered the statutory definition on which so much stress is laid was in full force and effect throughout the years in which this court was fixing the status of an oil and gas lease and definitely established, as a rule of property, that such instruments created personal property only and conveyed no interest in land notwithstanding the nature of such interest was classified as an incorporeal hereditament and a profit *a prendre*. The same argument as is now advanced by appellant was equally applicable then in determining the character of such an interest. We

must assume in that determination the court in its decisions gave full effect to the definition and rejected the theory that the term "incorporeal hereditament" when used in connection with oil and gas leasehold interests included land or any part thereof. That fact in itself when considered in the light of what has been repeatedly said and held in our decisions precludes the sustaining of appellant's contention.

But that is not all. In our opinion this court definitely rejected the contention in *Beren v. Marshall Oil & Gas Corp.*, 122 Kan. 134, 251 Pac. 192, when in its consideration of a statute using the phrase "real estate" instead of "land" and after giving full recognition to *Supply Co. v. McLeod,* supra, indicating the definition was to be observed unless it resulted in a construction inconsistent with the manifest intention of the legislature, it held:

"The statute making a judgment a lien on the real estate of the debtor within the county does not apply to an ordinary oil and gas lease." (Syl. ¶ 2.)

Under the definition the phrase "real estate" is to be given the same meaning as the word "land." Notwithstanding, after consideration of the definition by reference to *Supply Co. v. McLeod,* supra, wherein its effect was discussed, it was decided in the case from which we have just quoted the incorporeal hereditament conveyed by an oil and gas lease was not such an interest as could be subjected to a judgment lien under a statute (G. S. 1935, 60-3126) making judgments a lien on the *real estate* of a debtor. By analogous reasoning it seems clear that a similar interest is not *land* within the meaning of G. S. 1935, 60-510.

Finally, aside from all else, it is our view that to give the definition the interpretation placed thereon by appellant and apply it to the section of the statute just mentioned would result in a construction inconsistent with the manifest intent of the legislature as expressed therein.

We are not unmindful of the several cases cited by appellant wherein, as he claims, this court has held many times that oil and gas leases are to be treated as real property for certain purposes. In the interest of time and space we will not specifically refer to those cases or distinguish them. They have; however, been examined with care and interest. As to them, although it must be conceded that in some instances language can be found which would appear to sustain such a view, they were all decided on the basis of the peculiar language to be found in the statutory provisions in-

volved or on some other set of circumstances not comparable with the one at bar and no one of them is decisive of our conclusion with respect to the question which has just had our attention.

So obvious as to almost do away with any necessity for mentioning it, since they are carved out of them, is the statement that what has been heretofore stated with respect to oil and gas leases applies with equal force to overriding royalty interests and therefore disposes of appellant's contention this appeal involves an action to compel the specific performance of a contract for the sale of lands. Even so, it should be noted that what appellant seeks in this cause is twice removed from a leasehold interest and pertains to specific performance of an agreement to sell an undivided interest in and to oil and gas *produced, saved and sold* by the owner of the working interest. Without deciding the question, it should perhaps be stated there might be good grounds for holding such an interest is not land within the meaning of G. S. 1935, 60-510, even though our decisions had permitted the conclusion—which they do not—that oil and gas leases convey an interest in the land therein described.

It follows, under the record presented by this appeal, the action was not properly brought in Russell county. What has been said herein, however, is not to be construed as indicating that under the provisions of G. S. 1935, 17-509, a foreign corporation may not be sued in the county where the cause of action arose when the record discloses that fact and the other prerequisite conditions described therein.

Appellant's second position has been heretofore mentioned. It is that publication service is proper regardless of our decision with respect to G. S. 1935, 60-510.

Pertinent portions of G. S. 1935, 60-2525, providing for publication service in certain cases, reads:

"Service may be made by publication in either of the following cases:

. . . . . . . . . . . . .

"In actions brought against a nonresident of the state or a foreign corporation having in this state property or debts owing to him sought to be taken by any of the provisional remedies *or to be appropriated in any way.*

"In actions which relate to or the subject of which is real or personal property in this state, where any defendant has or claims a lien or interest, actual or contingent, therein, *or the relief demanded consists wholly or partly in excluding him from any interest therein,* and such defendant is a nonresident of the state or a foreign corporation." (Emphasis supplied.)

The contention is the emphasized phrases in the preceding quotation authorize service by publication irrespective of other sections of the statute pertaining to venue. We do not agree. The provisions of the statute pertaining to constructive service of summons do not create a cause of action or fix its venue. It is only when an action is instituted in the proper jurisdiction that such provisions become applicable. Here, as we have seen, that condition did not exist and the emphasized portions in the quoted matter of the section never became operative.

The conclusion just announced is supported by *Horner v. Ellis*, supra, where, with identical provisions of the statute pertaining to constructive service in force and effect, it was held no jurisdiction of a defendant could be obtained by publication service in a personam action.

Likewise by 49 Am. Jur. 163, § 139, Specific Performance, which states:

"In the absence of a statute conferring jurisdiction *in rem* upon equity courts to enable them to enforce their decrees without the necessity of having to reach the person of the defendant, jurisdiction in a suit for specific performance against a nonresident cannot be predicated on constructive service of process, although it is competent for the legislature to authorize specific performance of a contract to convey land in a suit upon constructive service, or to enact statutes which broadly specify character of the suits in which constructive service may be had and embrace suits for specific performance or enable courts of equity to convey local property of nonresidents through a master in equity. In this situation the proceeding is regarded substantially as a proceeding in rem."

Also by 42 Am. Jur. 75, § 87, Process:

"A suit to compel specific performance of a contract for the conveyance of real property is essentially a proceeding in personam, not one in rem, and in the absence of a statute conferring upon equity courts jurisdiction in rem to enable them to enforce their decrees without the necessity of having to reach the person of the defendant, such suits are still generally regarded as suits in personam, jurisdiction in which may not be predicated on constructive service of process: . . ."

In view of our decision on ground (*c*) of the motion to quash, grounds (*a*) and (*b*) thereof need not be considered.

The judgment of the district court sustaining the motion to quash the publication service is affirmed.

HARVEY, C. J., and SMITH, J., dissent.