**O'CONNOR v. J. M. HUBER CORPORA-TION et al.**

**Civ. No. 3378.**

United States District Court
D. Kansas, Second Division.

July 28, 1949.

Harry G. Wiles, St. John, Kansas for plaintiff.

George B. Collins, Collins, Williams & Hughes, Wichita, Kansas, for defendant J. M. Huber Corporation.

Morris & Laing, Wichita, Kansas for defendant Drillers Gas Co.

MELLOTT, District Judge.

This case, removed from the District Court of Stafford County, is before the court on a motion of defendant, J. M. Huber Corporation (hereinafter Huber) to dismiss. The complaint (petition in the state court) shows that the plaintiff, at the time of the filing of the complaint, was the holder of the title to a quarter section of land in Stafford County, which, on June 23, 1937, was subject to a life estate in his mother, Martha J. O'Connor. On that date he, his wife and his mother, made an oil and gas lease on the land to P. H. Beckerdite, an agreed copy of which is attached to the complaint. Previously, on March 6, 1937, the same persons had conveyed to Max Cohen "an undivided 30/160 or 30 royalty acres in and to all of the oil, gas and other minerals of every kind and character" in said land. In the lease to Beckerdite it was said of the lessors that they "reserve for themselves all bonuses and delay rentals to be paid under terms of this lease, excepting the 30/160 royalty interest of Max Cohen." The term of the mineral deed to Max Cohen was "a period of Ten (10) years from the date thereof." It expired on March 6, 1947. No delay rentals were, at any time, paid on the mineral interest held by Cohen and it was never under any oil and gas lease.

As the result of successive assignments of the Beckerdite lease Stanolind Oil and Gas Co. became the owner of it on April 7, 1947 and on that date assigned it to Huber "without covenants of warranty." The lease and all assignments thereof, except the one last mentioned, contained covenants of warranty. Huber is a New Jersey Corporation upon whose petition the case was removed to this court. The motion to dismiss the complaint is on two grounds: (1) That it "fails to state a claim * * * upon which relief can be granted"; and (2) that plaintiff "is estopped to assert that the 3/16ths mineral interest reverted to him free of the leasehold estate after he has made, executed and delivered an oil and gas lease containing full warranties of title * * *."

A producing gas well was drilled by Huber on the quarter section of land in April 1947. Defendant Drillers Gas Company, a Kansas Corporation, has filed an answer stating that its interest in this proceeding is only that of a purchaser of gas from the well and that it, at the time the answer was filed, had impounded and was holding $5,615.33. It asks the court to determine who is entitled to the funds withheld.

At the hearing on the motion to dismiss, matters outside the pleadings were presented to, and not excluded by, the court. Cf. Rule 12(b) of the Rules of Civil Procedure, as amended, 28 U.S.C.A. The hearing being also in the nature of a pre-trial conference, Rule 16, and it being obvious no substantial factual controversy existed, it was suggested by the court and assented to by counsel that the basic facts be stipulated. That was done within the time allowed and the facts so stipulated are, by this reference, found by the court. Most of them have already been alluded to briefly. The issue arising will be stated hypothetically.

▇▇ What are the rights of a lessor and lessee under a standard Kansas oil and gas lease where a producing gas well is brought in on a tract of 160 acres, the lease, on its face and on the face of the record of title covering only thirteen-sixteenths (13/16ths)? May the lessee be allowed to extract sixteen-sixteenths (16/16ths) of the gas without accounting to the owner of the tract for the three-sixteenths (3/16ths) not under lease? Shall the lessor of thirteen-sixteenths (13/16ths) of the tract be given, without cost, three-sixteenths (3/16ths) of the gas produced from a well drilled by the lessee of the thirteen-sixteenths (13/16ths)? Manifestly an affirmative answer should not be made either to the second or to the third question posed.

The instant suit is really in the nature of an action of interpleader, Title 28 United States Code Annotated, section 1335 and 2361. The plaintiff (lessor) asks that he be determined to be "the owner of all the 1/8th royalty interest and of the 3/16ths working interest;" also, that he have "judgment against the defendants for an accounting and payment from such production and monthly statements and payments" made by the Drillers Gas Co., which has indicated it is "ready, willing and able to pay" the amount owing by it "pursuant to order of court." While Huber has not filed an answer, it participated in the pretrial conference, signed, agreed on and filed with the court a stipulation of facts, and, upon brief, states its contention in this language:—

"Defendant contends: That, by virtue of the lease dated June 23, 1947, (sic-1937?) from Gerald P. O'Connor and his wife to one P. H. Beckerdite, as Lessee, which was subsequently assigned to Defendant, Plaintiff thereby leased for the purpose of exploring for oil and gas all his interests therein. The lease was executed on a regular producers Form 88 containing clause stating in effect that leasehold leases 'all that certain tract of land'. Defendant contends that there was no reservation or exception of any sort in the lease and that the parties merely acknowledge therein that Max Cohen held an outstanding undivided 3/16ths term interest in the minerals. That, therefore, plaintiff should not and cannot be allowed to say that he now owns a 3/16ths working interest in and to said lease and that he did not intend to lease his reversionary interest in said 3/16ths term mineral interest at the time outstanding in Max Cohen.

\*　　\*　　\*　　\*　　\*　　\*

"It is obvious from the terms of the lease and from the customs of the trade that the intent of the parties was that the lease should cover all the Plaintiff—Lessor's interest. It certainly would be unreasonable to assume that the parties intended the lease to cover only 13/16ths of the Plaintiff—Lessor's interest in the property. There was never any understanding to this effect nor was there ever any agreement that the Plaintiff was to pay for 3/16ths of the costs of drilling and equipping the well which he would have been obligated to pay had he actually owned a 3/16th W. I.

\*　　\*　　\*　　\*　　\*　　\*

"It is the contention of defendant that the oil and gas lease in question covers all of the plaintiff's interest in and to the property in question and that the plaintiff is entitled to only his 1/8th landowner's royalty of all the oil and gas produced from said property."

Thus it seems that the issue, which is clearly but one of law, has been fully submitted to the court and should be decided; but if the court has erred in so determining, Huber may, within fifteen (15) days from the entering of this opinion, file in the office of the clerk of this court its answer and the case will be duly calendared for further hearing.

▆ Passing, then, to the merits, the court is of the opinion that the case is one for the taking of mutual and reciprocal accounts. The arguments of the parties on the question of estoppel are not convincing. Plaintiff seems to imply, by his argument, that, since Huber knew the lease covered only thirteen-sixteenths (13/16ths), it is estopped from claiming more than that portion of the gas produced. He would therefore receive, as the owner of the three-sixteenths (3/16ths), acquired through the termination of the Cohen rights, three-sixteenths (3/16ths) of the production brought about by the expenditure of a substantial sum of money by Huber, thus being enriched at the expense of one who, in essence, was a sort of co-tenant or joint-owner of the whole leasehold interest. Fry v. Dewees, 151 Kan. 488, 99 P.2d 844. Huber's argument is equally fallacious and suggests an equally inequitable result. Starting with the false premise that title to real estate was conveyed by the signing of the Beckerdite lease, Cf. Burden v. Gypsy Oil Co., 141 Kan. 147, 40 P.2d 463, and Connell v. Kanawa Oil, Inc., 161 Kan. 649, 170 P.2d 631, it seems to rely upon the Kansas statute, G.S.1935, 67-207, and de-

cisions pertaining to title subsequently acquired by a grantor. The premise being unsound the conclusion falls. Moreover, the statute, by its terms, is applicable only "where a grantor by the terms of his deed undertakes to convey to the grantee an indefeasible estate in fee simple absolute."

But there are additional reasons for denying Huber's claims. When it undertook to develop the property it knew that the deed to Cohen had terminated, no well having been drilled within the ten-year period. Whether it endeavored to secure a lease on the three-sixteenths ($\frac{3}{16}$ths) interest and failed or whether it chose to drill a well without making any effort to secure a lease on that interest is not shown. Both parties, however, upon brief, advert to offers and demands relative to payment of plaintiff's "proportionate share of the cost of drilling and of production that would be chargeable to the * * * $\frac{30}{160}$ths interest."[1] Stanolind, Huber's assignor, also appears to have recognized plaintiff's rights to the three-sixteenths ($\frac{3}{16}$ths) interest when it provided in its assignment that "if Assignee should at a later date acquire an additional interest * * * then Assignor's overriding royalties would be increased proportionately."

No final judgment will be entered herein without giving the parties full opportunity to be heard. It is the court's present view, however, that the only factual controversy to be resolved is the taking of mutual accounts, including not only the cost of drilling and equipping the well but also the reasonable value of the three-sixteenths ($\frac{3}{16}$ths) interest not leased to Huber. If the parties can agree upon the accounting it will be unnecessary for the court to appoint a master. Equity and good conscience dictate that, after the off-setting of the accounts, plaintiff elect whether to pay his aliquot part of the cost of drilling and equipping the well, consent that the accruing royalties be used for that purpose, or accept royalties of one-eighth on the total production from the tract.