No. 39,443

THE DENVER NATIONAL BANK OF DENVER, COLORADO, Ancillary Executor of the Estate of Joseph J. Hall, Deceased, *Appellee*, v. THE STATE COMMISSION OF REVENUE AND TAXATION OF THE STATE OF KANSAS, *Appellant*.

(272 P. 2d 1070)

Opinion filed July 6, 1954.

*Charles C. Rankin*, of Lawrence, and *Ervin G. Johnston*, of Peru, argued the cause and *Wilbur G. Leonard*, of Council Grove, and *Beverly H. Wilder* and *Jack A. Quinlan*, both of Topeka, were with them on the briefs for the appellant.

*Richard M. Driscoll*, of Russell, argued the cause and *Jerry E. Driscoll*, of Russell, was with him on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This is an appeal from a judgment of the district court reversing an order of the commission of revenue and taxation sustaining a previous order of the director of revenue assessing inheritance tax on certain working interests in oil and gas properties in Kansas owned by a resident of Denver at the time of his death.

The case was tried on an agreed statement of facts. It was agreed that the owner of the property died testate in Denver and owned a gross estate in Kansas of $112,977.20 and certain percentages of working interests in producing oil and gas leases appraised at $96,029.26; that the director had determined a tax was due of $2,242.87; that such tax had been paid; that an application for abatement and refund had been denied; that should the working interests in the oil and gas leases owned by decedent at the time of his death be excluded from the inheritance tax computations, the total tax due would amount to $1,028.24; that Kansas and Colorado were reciprocal states; that the interests in the oil and gas leases in Kansas had been held to be taxable in Colorado and such tax had been paid; that the working interests in the oil and gas leases owned by decedent at the time of his death were operated by him through his office in Denver.

The stipulation then contained three paragraphs as follows:

"15. The sole remaining issue in this matter is whether the said working interests as afore-stated, which were owned by decedent at the time of his death, and operated by decedent through his office in Denver, Colorado, at the time of his death, are subject to taxation for inheritance tax purposes by the State of Kansas.

"16. That if the appellant's position herein is sustained, the Inheritance Tax owed the State of Kansas by said estate should be reduced to the amount of $1,028.24, and appellant is entitled to a tax refund in the amount of $1,214.63.

"17. That if the appellee's contention herein is sustained, no adjustment of inheritance tax paid is necessary."

The district court held the working interests in question were incorporeal and the property attempted to be taxed was without the jurisdiction of the state. The order of the state tax commission was reversed and the appellant was given judgment for $1,214.63. The commission has appealed from that judgment.

The specifications of error are that the district court erred in its findings; that the oil and gas lease was intangible personal property under the laws of Kansas; that there was nothing in the record to

show or indicate that the leases themselves had a taxable situs in the state of Kansas; that it was the interest of the deceased that was being taxed; that the property attempted to be taxed was without the jurisdiction of the state; and erred in overruling the motion for a new trial made by and on behalf of the state commission of revenue and taxation.

The action arises from the provisions of two sections, one is G. S. 1949, 79-1501. That is the section imposing an inheritance tax. It provides as follows:

"All property, corporeal or incorporeal, and any interest therein, within the jurisdiction of the state, whether belonging to the inhabitants of the state or not, which shall pass by will or by the laws regulating intestate succession, or by deed, grant or gift made in contemplation of death, or made or intended to take effect in possession or enjoyment after the death of the grantor, to any person, absolutely or in trust, except in case of a bona fide purchase for full consideration in money or money's worth; and except property to or for the use of literary, educational, scientific, religious, benevolent and charitable societies or institutions: *Provided,* Such use entitles the property so passing to be exempt from taxation; and except property to or for the use of the state, a county or a municipality for public purposes, shall be taxed as herein provided. . . ."

The other is G. S. 1949, 79-1501 (e). That section provides as follows:

"The tax imposed by this act in respect to personal property of nonresidents (other than tangible personal property having an actual situs in this state) shall not be payable (1) if the decedent at the time of his death was a resident of a state or territory of the United States which at the time of his death did not impose a transfer tax or death tax of any character in respect to personal property of residents of this state (other than tangible personal property having an actual situs in such state or territory), or (2) if the laws of the state or territory of residence of the decedent at the time of his death contained a reciprocal provision under which nonresidents were exempted from transfer taxes or death taxes of every character in respect to personal property (other than tangible personal property having an actual situs therein) provided the state or territory of residence of such nonresidents allowed a similar exemption to residents of the state or territory of residence of such decedent. In no case shall the provisions of this section apply to the intangible personal property of nonresident decedents unless such tangible [intangible] personal property shall have been subjected to a tax or submitted for purposes of taxation in the state of the decedent's residence. This section shall apply only to estates of decedents dying subsequent to the effective date of this section. For the purpose of this section the District of Columbia and possessions of the United States shall be considered territories of the United States."

All are agreed that Colorado is what is termed a reciprocal state, as referred to in the above section, that is, the statutes of Colorado

extend the same immunity to Kansans owning certain types of property in Colorado as is being claimed for the estate of this decedent resident of Colorado owning a certain type of property in Kansas.

The outcome depends on the construction to be given the first provision of G. S. 1949, 79-1501 (e). That provision is short and for convenience in consideration will be repeated here as follows:

"The tax imposed by this act in respect to personal property of nonresidents (other than tangible personal property having an actual situs in this state) shall not be payable. . . ."

The statute then lays down certain conditions with which we are not concerned. The act may be read "The tax imposed by this act in respect to personal property of nonresidents, where the property is intangible, or does not have an actual situs in this state, shall not be payable."

The court below held these percentages in the working interests in the oil and gas leases were intangible and hence not taxable. The appellant challenges that ruling and argues that such interests should have been held to be an interest in real estate and hence taxable.

This brings us to a consideration of what is a working interest in an oil and gas lease. The manner in which such interests arise is well stated in *Robinson v. Jones*, 119 Kan. 609, 240 Pac. 957. The one-eighth share to be paid the landowner or lessor under the common form of lease is known in the trade as royalty. The seven-eighths interest in the oil produced is known as the working interest. Under the simplest situation the parties who owned the lease and drilled the well would own this seven-eighths interest. As it actually works out in practice, however, financial dealings being what they are, several parties may own a share in the working interest. On some-body must fall the expense of raising the oil from the ground and marketing it. Sometimes part of the working interest is held by a party free and clear of this expense. Such an interest is called an "overriding royalty." This record does not disclose whether the interest owned by decedent was an override or a mere share in the working interest. At any rate, on the part of its owner it was a right to be paid by the operator of the lease his share of the oil or gas produced by a well, whatever it might be. What right he had was a mere chose in action. In other words he could enforce it against the operator of the lease.

It is well settled that an oil and gas lease conveys no interest in land but is merely a license to explore and is personal property, an incorporeal hereditament—a profit a *prendre*. (See *Connell v. Kanwa Oil Inc.*, 161 Kan. 649, 170 P. 2d 631, and cases there cited.) The interests owned by decedent arose from oil and gas leases. They take on the same character as the instrument from which they arose and are what was meant by the legislature when the words "other than tangible personal property" were used. They partake of the same general nature as patents, franchises, copyrights, rents, wages and incorporeal property generally. . The stipulation of facts stated that the working interests were operated by decedent through his office in Denver. Having concluded that these working interests are not tangible property, it is unnecessary to discuss the other questions raised and argued.

The judgment of the trial court is affirmed.