No. 39,443

THE DENVER NATIONAL BANK OF DENVER, COLORADO, Ancillary Executor of the Estate of Joseph J. Hall, Deceased, *Appellee,* v. THE STATE COMMISSION OF REVENUE AND TAXATION OF THE STATE OF KANSAS, *Appellant.*

(279 P. 2d 257)

Opinion on rehearing filed January 22, 1955. see

*Denver National Bank v. State Commission of Revenue & Taxation,* 176 Kan. 617, 272 P. 2d 1070.)

*Ervin G. Johnston,* of Peru, and *Paul Hurd,* of Topeka, both argued the cause and were on the briefs for the appellant.

*Richard M. Driscoll,* of Russell, argued the cause and *Jerry E. Driscoll,* of Russell, was with him on the briefs for the appellee.

*Harold R. Fatzer,* attorney general, *Thomas M. Evans,* assistant attorney general, and *Charles C. McCarter,* assistant attorney general, as *amicus curiae.*

The opinion of the court was delivered by

SMITH, J.: This is an opinion on rehearing. The judgment was affirmed in an opinion filed on July 6, 1954. (See *Denver National Bank v. State Commission of Revenue & Taxation,* 176 Kan. 617, 272 P. 2d 1070.) This court sustained a motion for a rehearing and set the argument for our December session. It was reargued and resubmitted. Because of some argument pursuant to the mo-

tion for rehearing this opinion on rehearing will be filed. The facts were stated in the former opinion. However, for convenience in following the court's present position in the matter they shall be restated here.

It was an appeal from a judgment of the district court reversing an order of the commission of revenue and taxation sustaining an order of the director of revenue assessing inheritance tax on certain working interests in oil and gas properties. The case was tried on an agreed statement of facts. That statement will be set out verbatim here. It is as follows:

"1. The decedent Joseph J. Hall died testate September 21, 1951, a resident of Denver, Colorado.

"2. Domiciliary administration proceedings are now pending in Denver County, Colorado, and ancillary proceedings are now pending in the Probate Court of Russell County, Kansas.

"3. In the last will and testament of said decedent the Denver National Bank of Denver, Colorado, was named executor, and that the Denver National Bank of Denver, Colorado, has been appointed ancillary executor in the State of Kansas.

"4. On or about June 4, 1952, the Denver National Bank of Denver, Colorado, as ancillary executor, filed a report with the Director of Revenue for inheritance tax purposes showing a gross estate located within the State of Kansas in the amount of $112,977.20, and in addition thereto certain percentages of working interests in producing oil and gas leases, said oil and gas leases covering land located in Russell and Ellis Counties, Kansas, having an appraised value of $96,029.26.

"5. Under date of June 18, 1952, Bert E. Mitchener, then Director of Revenue, entered an order No. 185712 wherein it was determined by the State of Kansas that said estate owed inheritance taxes to the State of Kansas in the amount of $2,242.87.

"6. The tax as computed by the Director of Revenue of the State of Kansas was paid to the county treasurer of Russell County, Kansas, on or about March 13, 1953.

"7. That thereafter the ancillary executor, the Denver National Bank of Denver, Colorado, filed or caused to be filed an application for abatement and refund of inheritance taxes, alleging that the working interests owned by said decedent at the time of his death in the oil and gas leases aforesaid were not subject to taxation by the State of Kansas.

"8. On or about the 15th day of June, 1953, the Director of Revenue and Taxation of the State of Kansas entered his order denying the abatement and refund.

"9. On or about the 16th day of September, 1953, the ancillary executor, the Denver National Bank of Denver, Colorado, filed or caused to be filed with the State Commission of Revenue and Taxation of the State of Kansas, an appeal from the order of the Director of Revenue as aforesaid.

"10. That on or about the 14th day of October, 1953, the said Commission

of Revenue and Taxation of the State of Kansas issued its order sustaining the Director of Revenue and denying the relief sought by the aforesaid ancillary executor.

"11. Should the working interest in the oil and gas leases aforesaid, which was owned by decedent at the time of his death, be excluded from the inheritance tax computations as made and entered by the State of Kansas, the total tax due the State of Kansas would amount to $1,028.24.

"12. That the states of Colorado and Kansas are reciprocal states insofar as the Kansas Inheritance Tax laws are concerned.

"13. That the percentage of working interests in oil and gas leases in the State of Kansas as aforesaid owned by decedent at the time of his death were included in the inheritance tax report filed with the Colorado Inheritance Tax Department, and that same were held to be taxable by the State of Colorado, and the tax as computed thereon by the Colorado Inheritance Tax Department of the State of Colorado has been paid.

"14. The working interests in the oil and gas leases as aforesaid owned by the decedent at the time of his death were operated by decedent at the time of his death by and through his office which was located in Denver, Colorado.

"15. The sole remaining issue in this matter is whether the said working interests as afore-stated, which were owned by decedent at the time of his death, and operated by decedent through his office in Denver, Colorado, at the time of his death, are subject to taxation for inheritance tax purposes by the State of Kansas.

"16. That if the appellant's position herein is sustained, the Inheritance Tax owed the State of Kansas by said estate should be reduced to the amount of $1,028.24, and appellant is entitled to a tax refund in the amount of $1,214.63.

"17. That if the appellee's contention herein is sustained, no adjustment of inheritance tax paid is necessary.

"18. That there shall be introduced in evidence herewith the order from the Director of Revenue dated June 12, 1953, in said cause, and the order from the State Commission of Revenue and Taxation of the State of Kansas, dated October 14, 1953."

The district court considered this stipulation and incorporated in its journal entry a rather detailed memorandum holding that the working interests in question were incorporeal and intangible and the property was without the jurisdiction of the state. The order of the tax commission was reversed and the appellant was given judgment for $1,214.63.

The commission appealed from that judgment.

The specifications of error were that the district court erred in its finding and conclusion that the oil and gas lease was intangible personal property under the laws of Kansas; that there was nothing in the record to show or indicate that the leases themselves had a

taxable situs in the state; that it was the interest of the deceased that was being taxed; that the property attempted to be taxed was without the jurisdiction of the state; and that it erred in overruling the motion for a new trial made by and on behalf of the state commission of revenue and taxation.

The action arose from the provisions of two sections. One is G. S. 1949, 79-1501. That is the section imposing an inheritance tax. It provides as follows:

"All property, corporeal or incorporeal, and any interest therein, within the jurisdiction of the state, whether belonging to the inhabitants of the state or not, which shall pass by will or by the laws regulating intestate succession, or by deed, grant or gift made in contemplation of death, or made or intended to take effect in possession or enjoyment after the death of the grantor, to any person, absolutely or in trust, except in case of a bona fide purchase for full consideration in money or money's worth; and except property to or for the use of literary, educational, scientific, religious, benevolent and charitable societies or institutions: *Provided,* Such use entitles the property so passing to be exempt from taxation; and except property to or for the use of the state, a county or a municipality for public purposes, shall be taxed as herein provided. . . ."

The other section is G. S. 1949, 79-1501 (e). That section provides:

"The tax imposed by this act in respect to personal property of nonresidents (other than tangible personal property having an actual situs in this state) shall not be payable (1) if the decedent at the time of his death was a resident of a state or territory of the United States which at the time of his death did not impose a transfer tax or death tax of any character in respect to personal property of residents of this state (other than tangible personal property having an actual situs in such state or territory), or (2) if the laws of the state or territory of residence of the decedent at the time of his death contained a reciprocal provision under which nonresidents were exempted from transfer taxes or death taxes of every character in respect to personal property (other than tangible personal property having an actual situs therein) provided the state or territory of residence of such nonresidents allowed a similar exemption to residents of the state or territory of residence of such decedent. In no case shall the provisions of this section apply to the intangible personal property of nonresident decedents unless such tangible (intangible) personal property shall have been subjected to a tax or submitted for the purposes of taxation in the state of the decedent's residence. This section shall apply only to estates of decedents dying subsequent to the effective date of this section. For the purpose of this section the District of Columbia and possessions of the United States shall be considered territories of the United States. (L. 1941, ch. 369, § 5; June 30.)"

Our opinion stated:

"All are agreed that Colorado is what is termed a reciprocal state, as referred to in the above section, that is, the statutes of Colorado extend the same immunity to Kansans owning certain types of property in Colorado as is being claimed for the estate of this decedent resident of Colorado owning a certain type of property in Kansas."

We then construed G. S. 1949, 79-1501 (e) and held that the working interests we were considering were a chose in action, decedent's right to be paid by the operator of the lease his share of the oil or gas produced from the lease which arose under an oil and gas lease and since an oil and gas lease was merely a license to explore and produce, was personal property, an incorporeal hereditament, a *profit a prendre,* the interests arose no higher than the instrument under which they were created and took on the same character—hence were intangible.

On the motion for rehearing counsel for the tax commission took first a vigorous exception to the statement in the opinion to the effect that Colorado is what is termed a reciprocal state, that is, that the statutes of Colorado extended the same immunity to Kansans owning certain types of property in Colorado as was being claimed for the estate of decedent, a resident of Colorado, owning a certain type of property in Kansas. They concede the stipulation of facts did have the statement to which reference has been made, and which was quoted above. They state now, however, they did not intend to convey the impression that a resident of Kansas owning rights similar to these in Colorado would be granted the same immunity from the inheritance tax that is claimed for the estate of this resident of Colorado owning them in Kansas. In this connection they refer in their motion for a rehearing to a statute of Colorado, which provides that

"The term 'real estate' (for tax purposes) includes . . . all mines, minerals and quarries in and under the land and *all rights and privileges* appertaining thereto." (Section 17, Chapter 142, 1935 Colorado Statutes Ann.) (Emphasis supplied.)

Also, another section, namely Section 6 and 6b, Chapter 85, 1935 Colorado Statutes Annotated, states:

"A tax is hereby imposed . . . upon transfers . . . when the transfer is from a nonresident of this state (of) real property situated in this state . . ."

They argue from these that Colorado is not a reciprocal state and that G. S. 1949, 79-1501 (e) does not apply to a resident of

Colorado. This argument was raised for the first time in the motion for a rehearing. We understood the quoted paragraph of the stipulation to mean just what it says. The learned district judge evidently gave it the same construction since in his memorandum opinion, which we are fortunate enough to have as a part of this record, the court devoted all its attention to consideration of the question whether these interests were intangible and treated that question as though the matter of reciprocity was conceded and had been argued by counsel for both sides in the district court. Certainly it was so argued when the appeal was submitted to us on its original presentation. The learned district judge himself stated in his memorandum opinion it was so agreed. It is clear the argument that Colorado is not a reciprocal state was not presented to the district court. Hence the effect of the commission's argument on this point is to ask that we reverse the trial court's judgment on a question that was not presented to that court. This we will not do. The point is raised too late. We decide cases on the record made in the lower court and submitted to us. No legal point is much better buttressed by the authorities than this. Some cases in point are *Railway Co. v. Cooper*, 57 Kan. 185, 45 Pac. 587, and *Board of Education v. Clark*, 64 Kan. 430, 67 Pac. 862.

The motion for a rehearing took exception to the statement in our opinion that the right of the decedent was a right to be paid, by the operator of the leases, a share of the oil and gas produced. They make the categorical statement, the undisputed evidence showed the decedent himself was the operator of the leases. The commission then from this statement argues, our conclusion the decedent owned only a chose in action was not good. Here again we must point out, the pleadings in the record, as well as the stipulation, stated that decedent owned a percentage of the working interests. The trial court also so considered it. Furthermore, counsel at the argument when the appeal was here the first time so argued. Actually we are prevented from considering this point here by the same rule already announced.

Following the argument just discussed, the commission in its motion for a rehearing argues that for taxation purposes oil and gas leases are not intangible property. With this argument the commission deals with the real point in the appeal. In this connection the commission cites G. S. 1949, 79-329. That section provides as follows:

"That for the purpose of valuation and taxation, all oil and gas leases and all oil and gas wells, producing or capable of producing oil or gas in paying quantities, together with all casing, tubing or other material therein, and all other equipment and material used in operating the oil or gas wells are hereby declared to be personal property and shall be assessed and taxed as such."

Based on this statute, the commission makes the categorical statement that in the light of it we cannot say the legislature meant oil and gas leases to be other than tangible property. We fail to see how this follows. While we did not deal with this section in our opinion we did consider it when reaching our decision. The fact that oil and gas leases are personal property has no bearing on whether they are tangible or intangible. The section cited is part of the statutes dealing with ad valorem taxation. It is no part of the inheritance tax act. In this case, the casing, tubing and other equipment and other material on these leases were separately enumerated and appraised and the inheritance tax on it was paid as a matter of course. The commission cites and quotes from *Robinson v. Jones*, 119 Kan. 609, 240 Pac. 957, to sustain its argument on this point. This opinion deals with the matter of valuing an oil and gas lease for ad valorem taxes. It contains the statement, however, that:

"A unit of taxation was defined composed of the intangible interests and those physical things by means of which the object of the lease, production of mineral, is realized."

It appears such is precisely the result of the trial court's judgment here. The physical things on these leases were included in a separate listing and the inheritance tax was paid while the intangible interests were held to be intangible and exempted from the inheritance tax.

In our consideration of this appeal we took note of the fact that the trial court considered these working interests to be analogous to patents, franchises, copyrights, rents, ways and incorporeal property generally. In this connection we have considered G. S. 1949, 79-3108. That was Section 1, Chapter 312 of the Laws of 1931, commonly known as the intangible tax act. It provides as follows:

"That for the purpose of taxation the term 'money' shall mean and include gold and silver coin, United States treasury notes, and other forms of currency in common use. The term 'notes and other evidences of debt' shall include and mean certificates evidencing shares of stock otherwise taxable to the owner

or holder, notes, bonds, debentures, claims secured by deed, liquidated claims and demands for money, and all written instruments, contracts or other writings evidencing, calling for, fixing or showing a fixed obligation, determined or determinable, at present or in the future, in favor of the holder thereof."

We have no trouble in concluding that an oil and gas lease is a written instrument "evidencing, calling for, fixing or showing a fixed obligation, determined or determinable, at present or in the future." In considering this motion for a rehearing we have again examined the authorities cited in our original opinion. We find them to be controlling.

The judgment of affirmance is adhered to.

HARVEY, C. J.: dissents.