**Courtney B. DAVIS, Appellant,**

v.

**CITIES SERVICE OIL COMPANY, a corporation, Appellee.**

**No. 7712.**

United States Court of Appeals
Tenth Circuit.

Nov. 12, 1964.

Robert B. Martin, Wichita, Kan. (D. Arthur Walker, Arkansas City, Kan., Thomas M. Burns, Denver, Colo., Laverne Morin, George B. Collins, Oliver H.

Hughes, K. W. Pringle, Jr., W. F. Schell, Robert M. Collins, William L. Oliver, Jr., William V. Crank and Tom C. Triplett, Wichita, Kan., on the brief), for appellant.

R. O. Mason, Bartlesville, Okl., and P. K. Smith, Wichita, Kan. (Gentry Lee, C. C. Cammack, Bartlesville, Okl., F. C. McMaster and Stanford J. Smith, Wichita, Kan., on the brief), for appellee.

Before PHILLIPS, PICKETT and HILL, Circuit Judges.

HILL, Circuit Judge.

This action was brought to compel the performance of an alleged contract to account for, and pay, royalty on oil and gas production from real property located in Greenwood County, Kansas. The case was submitted to the trial court upon stipulated facts and judgment was entered in favor of the appellee-defendant. The appeal is from that judgment.

The stipulated facts, necessary for a proper disposition of the case, are as follows: In 1923, appellant Davis acquired an oil and gas lease covering a block of 1,280 acres of land from the then owner, William P. Browning. The primary term of the lease was for five years "and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee in paying quantities." Shortly thereafter, Davis assigned two adjoining half-sections on the east side of the block to Sinclair Oil & Gas Company (Sinclair) and also assigned a quarter-section, situated to the west of the Sinclair section, to Empire Gas and Fuel Company. Empire was subsequently purchased by the appellee, Cities Service Oil Company (Cities Service) and it became the owner of the lease. In the assignment to Empire, Davis reserved " * * * unto himself the one thirty second (1/32) of the oil and gas produced and saved from said premises to be carried as a royalty in the same manner and under the same conditions as the land owners royalty. * * * " It is this contractual arrangement that gives rise to the instant litigation.

In 1924, Sinclair drilled on its portion of the assigned lease and developed substantial production of oil therefrom. Between 40 and 50 producing oil wells were drilled in the next few years by Sinclair on the portion of the lease assigned to it. Shortly after production was obtained, Sinclair prepared and filed an affidavit of production in compliance with Kansas law.[1] However, this affidavit described only that portion of the block covered by the assignment from Davis to Sinclair and made no reference to the portion assigned to Cities Service. Nonetheless, the production by Sinclair did perpetuate the entire original lease, including the portion assigned to Cities Service, and that production has been continuous from the time it commenced. No production was ever achieved by Cities Service or its predecessor upon its leasehold and neither of them were ever in possession or ever filed an affidavit of production.

In 1955, the heirs of the original lessor, Browning, executed and delivered an oil and gas lease, covering the same quarter-section assigned to Cities Service as related above, to a man named Vanderman. By a series of transactions, this lease became vested in E. H. Adair and his associates, hereinafter referred to as Adair, who obtained substantial production of oil upon the lease. Adair, in fact, drilled and developed 3 producing oil wells in late 1956 and early 1957. When Cities Service learned of this, it commenced an action for possession of the leased premises claiming that the 1923 lease from Browning to Davis was in full force and effect by virtue of the production by Sinclair and that Adair had acquired the 1955 lease with both actual and constructive notice of the assignment to it of a portion of the 1923 lease. Trial of the action resulted in a judgment in favor of Adair and this court affirmed that judgment on the basis that Adair was a bona fide purchaser without notice of the asserted rights of Cities Service under the 1923 lease. We held that Adair was without actual notice of those rights and

---

1. The pertinent statute is now Kan.G.S.1949, 55–205.

that there was no constructive notice because the affidavit of production by Sinclair was outside the chain of title to the quarter-section of land in question. Cities Service Oil Company v. Adair, 10 Cir., 273 F.2d 673. Davis was not a party to that action.

In 1961, appellant commenced this action against Cities Service to compel it to account for and pay over to him a sum equal to $\frac{1}{32}$ of the value of all oil produced, and to be produced in the future, from the quarter-section of land in question. Appellant's position was that the 1923 lease was still in force and effect or could have been retained in force and effect, had Cities Service filed an affidavit of production; that under the assignment from Davis to Cities Service, he contracted with the assignee for a royalty payment of $\frac{1}{32}$ of the production from the premises; that Cities Service had an obligation to protect the lessee's working interest under the 1923 lease, including his royalty interest, which it failed to fulfill by allowing others to obtain superior rights as bona fide purchasers; and that Cities Service is therefore liable under the royalty contract. It was stipulated that Cities Service had knowledge of the fact that Sinclair had obtained production upon its portion of the 1923 lease and that Cities Service had neither filed an affidavit of production nor executed and filed a release of the 1923 lease at any time up to the date of trial. It was also stipulated that: "Where it is necessary or appropriate to file an affidavit of production, it is the established custom and practice of the industry in the State of Kansas, that the operator of the lease or the owner of the working interest, prepare and file the affidavit, and the owner of an overriding royalty interest does not do so."

Appellant makes several contentions on this appeal to secure a reversal of the judgment below. We think, however, that the determinative issue is whether Cities Service had a duty to file an affidavit of production in compliance with the Kansas statute or to perform any other act to protect the overriding royalty of Davis. If any such duty exists, it must be either by virtue of the agreement between the parties or because of some requirement in the statute.

Section 55–205 provides that the recording of an oil and gas lease in the office of the appropriate register of deeds shall impart notice to the public of the validity and continuance of the lease for the primary term expressed therein and for "no longer". However, it also provides that if the lease contains a contingency clause, i. e., a clause extending the term of the lease in the event oil or gas or either of them is produced from the leased premises in paying quantities, then the owner of the lease "may at any time before the expiration of the definite term" of the lease file an affidavit reciting, among other things, that the contingency has happened and the record of such affidavit, together with that of the lease, "shall be due notice to the public of the existence and continuing validity" of the lease. There is nothing in this statute that absolutely requires an owner of an oil and gas lease to file an affidavit when production is obtained upon the leased premises. It merely states that an owner "may" file such an affidavit and the sole purpose of that provision of the statute is to give notice to the public that the lease has been extended beyond its primary term. Storm v. Barbara Oil Company, 177 Kan. 589, 282 P.2d 417; Cities Service Oil Company v. Adair, supra. Of course, the owners, or partial owners, of an oil and gas lease must file affidavits of production " * * * if they desire to protect their leaseholds as against innocent purchasers for value. * * * " Cities Service Oil Company v. Adair, supra, 273 F.2d at 677. But that does not mean that an affidavit must be filed in the event production occurs. It means only that the affidavit must be filed if the owner desires to protect himself against innocent purchasers for value. We have no hesitancy in holding that the statute does not impose an absolute duty on Cities Service to file an affidavit of production.

Appellant contends that Cities Service owed him a contractual duty, by virtue of the provision in the assignment from Davis to Empire whereby he reserved a 1/32 royalty interest, to file an affidavit of production so as to extend the primary term of the 1923 lease and that it breached such duty by failing to file the affidavit. The argument is that this provision in the assignment is silent on the question of who has the duty to file such an affidavit and since it is silent, the custom and practice in the industry may properly be implied as a part of the agreement. And, appellant points out, it has been stipulated that the established custom and practice in the oil and gas industry in Kansas is for the operator of the lease or the owner of the working interest, and not the owner of an overriding royalty, to prepare and file an affidavit of production where it is necessary or appropriate to do so. In other words, appellant argues that there should be added to the royalty provision in the assignment, by implication, a further clause so that it would read: " * * * Reserving however unto himself the one thirty second (1/32) of the oil and gas produced and saved from said premises to be carried as a royalty in the same manner and under the same conditions as the land owners royalty; and when it is necessary or appropriate to file an affidavit of production, assignee (Cities Service) will prepare and file the same and assignor (Davis) need not do so. * * "

■■ Assuming without deciding, that appellant's argument is sound, it still is not controlling here. It overlooks and ignores the crucial point of the case which is the real nature of his interest. Obviously, the provision in the assignment reserving the 1/32 royalty interest is not an absolute and unconditional promise by the assignee, Cities Service, to pay Davis a sum equal to 1/32 of any and all production from the leasehold, regardless of who might obtain such pro-

duction. Rather, it is the familiar provision in the assignment of an oil and gas lease whereby the assignor carves a share of the oil and gas produced out of the working interest to reserve for himself and this type of interest is generally referred to as an "overriding royalty".[2] The owner of an overriding royalty has an interest in the production and by the assignment, the assignee agrees to pay him the specified fractional share of that production, which payment is over and above the royalty payment to the lessor. 3 Summers on Oil and Gas, § 554, pp. 625–626. But that agreement to pay the overriding royalty is by the very terms of the assignment and lease a conditional one. It arises only when, and if, the assignee obtains production from the leasehold in paying quantities. That event never occurred in this case as the assignee, Cities Service, never obtained production under its lease. Therefore, the agreement to pay never became effective and it necessarily follows that any implied obligation in that agreement never became effective or binding.

■■ Moreover, we do not think that the custom and practice relied upon by appellant has any application in this case. Such custom and practice applies only where production is obtained by the assignee of a lease under the lease assigned to him. No production was ever obtained by the assignee, Cities Service, under the lease in question and therefore any obligations that might be imposed by custom and practice never arose.

We are further of the opinion that appellant's rights as the owner of an overriding royalty under the facts of this case are analogous to the rights of the owner of an overriding royalty in a situation where the owner of the working interest releases the lease or permits it to expire. In such a situation, the majority rule is that the rights of the overriding royalty owner do not survive the termination of the lease. 3 Summers on

2. The interest created by the provision in question clearly falls within the definition of "overriding royalty". See Denver Nat. Bank of Denver, Colorado v. State Com-

mission of Rev. & Tax., 176 Kan. 617, 272 P.2d 1070; Wright v. Brush, 10 Cir., 115 F.2d 265.

Oil and Gas, § 554, p. 634. The rule is modified in some jurisdictions on the theory that the assignee has violated a fiduciary relationship by permitting the lease to expire, but even in those jurisdictions it is held that the mere assignment of the lease, such as we have here, does not create a fiduciary relationship. It must be created by express terms in the assignment. 3 Summers on Oil and Gas, § 554, pp. 634–635.

We are unable to find anything in either the statute or the contractual arrangement between the parties that would impose a legal duty upon the assignee of the 1923 lease, Cities Service, to file an affidavit of production or to perform any other act to protect the overriding royalty interest of Davis.

All of the legal theories relied upon by the appellant to sustain his contentions are premised upon the assumption that Cities Service owed him a duty to file the affidavit. But, we have determined otherwise and, therefore, those theories are not applicable.

Affirmed.